# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY KILBOURNE, on behalf of himself, all others similarly situated, and the general public,<br><br>   Plaintiff,<br>vs.<br><br>THE COCA-COLA COMPANY; COCA-COLA REFRESHMENTS USA, INC.; BCI COCA-COLA BOTTLING COMPANY OF LOS ANGELES.<br><br>   Defendants. | CASE NO. 14cv984-MMA (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Doc. No. 16] |

Plaintiff Gary Kilbourne brings suit against his former employer the Coca-Cola Company and its related entities[1] for multiple violations of California's wage and hour laws. Defendants move for partial summary judgment on Plaintiff's first, second, third,[2] and fifth claims. *See* Doc. No. 16. Plaintiff filed an opposition, to which Defendants replied. *See* Doc. Nos. 17, 18. The Court, it its discretion, found

---

[1] Plaintiff has also named BCI Coca-Cola Bottling Company of Los Angeles and Coca-Cola Refreshments USA, Incorporated as defendants. The Court refers to the defendants collectively as "Defendants" or "Coca-Cola."

[2] Defendants subsequently filed a notice of withdrawal as to their motion for summary judgment on Plaintiff's third claim for the time period March 20, 2010 through December 31, 2010. *See* Doc. No. 19. Accordingly, Defendants only seek summary judgment on Plaintiff's third claim for the time period beginning January 1, 2011. *See id.*

this matter suitable for determination on the papers, and without oral argument, pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for partial summary judgment.

## BACKGROUND[3]

### A.     Factual Background

Plaintiff worked as a non-exempt truck driver for the distribution department of Coca-Cola's Oceanside facility from approximately November 2007 to February 11, 2013.  Plaintiff was a member of Teamsters Local No. 683 labor union, and therefore his employment at Coca-Cola was governed by two collective bargaining agreements (collectively, "the CBAs").  The first agreement was negotiated between the BCI Coca-Cola Bottling Company of Los Angeles - Oceanside Facility and Teamster Local No. 683 labor union.  This agreement, referred to as the "BCI CBA," governed Plaintiff's employment from March 20, 2010 until May 31, 2011, when the BCI CBA expired.  *See* Matsuda Decl. Ex G ("BCI CBA"), Doc. No. 16-3. The second agreement was negotiated between Coca-Cola Refreshments USA, Inc. - Oceanside Facility and the Teamsters Local No. 683 labor union.  This agreement, referred to as the "CCR CBA," governed Plaintiff's employment from June 1, 2011 until February 11, 2013, the date Plaintiff's employment terminated.  *See* Matsuda Decl. Ex. H ("CCR CBA"), Doc. No. 16-4.

### B.     Relevant Terms of the CBAs[4]

Article 17 of the CBAs set forth the starting hourly wages for its distribution department employees as follows: $18.25 per hour as of January 1, 2009, $18.75 per hour as of January 1, 2010, $19.15 per hour as of June 1, 2012, and $19.55 per hour

---

[3] The fact cited herein are taken from the parties' separate statements of undisputed facts and are not reasonably in dispute.

[4] Where the two agreements have the same or substantially similar terms, the Court references the CBAs collectively by Article number.  Where the agreements differ, the Court references the individual agreement by name.

as of June 1, 2013. *See* Art. 17. It is undisputed that Plaintiff earned at least $20.47 per hour during the relevant time period from March 2010 to February 11, 2013.

Article 18 of the CBAs address the workweek, overtime, and premium pay. *See* Art. 18. The CBAs set forth that the normal workweek schedule for regular full-time employees is 40 hours. Art. 18, § 1. According to the terms of the CBAs, "[e]mployees can be scheduled to work schedules consisting of any five (5) days in seven (7) with a workday of eight (8) consecutive hours of work exclusive of lunch periods; and four (4) days in seven (7) with a workday of ten (10) consecutive hours of work exclusive of lunch periods." *Id.* The CBAs further provide that an employee shall receive "two (2) consecutive days off of work in the employee's respective workweek." *Id.*

The CBAs further provide for overtime compensation depending on the employee's assigned work schedule, as set forth above. According to the CBAs, hourly employees assigned to work a five day, eight-hour day workweek are compensated "at the rate of one and one-half (1 ½) times the employee's regular straight time rate of pay" for "all hours worked in excess of eight (8) hours per day or forty (40) hours per week" as well as for "[t]he first eight (8) hours on the seventh consecutive day of work in a workweek." Art. 18, § 2. Similarly, hourly employees assigned to work a four day, ten-hour day workweek are compensated at a rate of 1 ½ times the employee's regular pay for "all hours worked in excess of ten (10) hours per day or forty (40) hours per week" as well as for "[t]he first eight (8) hours on the seventh consecutive day of work in a workweek." *Id.* The CBAs further provide for overtime compensation of 2 times the regular straight time rate of pay for any hours worked in excess of 12 hours per day and for all work in excess of 8 hours on the seventh consecutive day of work in the workweek. *Id.*

The CBAs further provide an unpaid meal period of 30 minutes. *See* BCI CBA Art. 27; CCR CBA Art. 26. Specifically, Article 27 of the BCI CBA provides "[a]ll employees shall be entitled to a thirty (30) minutes unpaid meal period for

every five (5) hours worked. BCI CBA, Art. 27, § 1. Article 27 further provides a second meal period where "an employee works more than ten (10) hours per day." *Id.* However, where the work day is more than 10 hours but less than 12 hours, the employee may waive the second meal period by mutual consent. *Id.* In the CCR CBA, Article 26 provides "an unpaid meal period of thirty (30) minutes for employees shall commence before the sixth (6th) hour of each shift." CCR CBA, Art. 26. Article 26 further provides "[a]n unpaid meal period of thirty (30) minutes shall be offered before the tenth (10th) hour in the event an employee will be working twelve hours or more." *Id.* An employee may waive the second meal period by mutual consent only if the first meal period was not waived. *Id.*

C. ***Procedural History***

On March 20, 2014, Plaintiff filed this putative class action in the Superior Court of California. *See* Compl., Doc. No. 1-2. Plaintiff's complaint alleges ten causes of action for: (1) Wage Theft and/or Time Shaving; (2) Failure to pay overtime; (3) Failure to provide meal periods; (4) Failure to provide rest periods; (5) Knowing and intentional failure to comply with itemized employee wage statement provisions; (6) Conversion; (7) Fraud; (8) Unjust Enrichment; (9) Waiting time penalties; and (10) Violations of Unfair Competition Laws, Business and Professions Code section 17200, *et seq. Id.*

On April 18, 2014, Defendants removed Plaintiff's complaint to federal court. *See* Doc. No. 1. Defendants then moved to dismiss Plaintiff's sixth claim for conversion and seventh claim for fraud pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 5. On May 6, 2014, Plaintiff voluntarily dismissed his sixth claim for conversion and seventh claim for fraud pursuant to Federal Rule of Civil Procedure 41. *See* Doc. No. 8. Accordingly, Defendants withdrew their pending motion to dismiss and filed an answer. *See* Doc. Nos. 11, 14.

Defendants now move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's first, second, third, and fifth claims.

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Id.* at 323. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

If the moving party meets its initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986). When a party fails to properly address another party's assertions of fact, a court may consider these facts as undisputed. Fed. R. Civ. P. 56(e)(2). If the motion and supporting materials, including facts considered undisputed, show the movant is entitled to summary judgment, the court may grant the motion. Fed. R. Civ. P. 56(e)(3). Summary judgment is not appropriate, however, if the non-moving party presents evidence from which a reasonable jury could resolve the disputed issue of material fact in his or her favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991).

## DISCUSSION

**A.    Plaintiff's Request for a Continuance**

As a preliminary matter, Plaintiff requests that the Court continue these

proceedings to allow Plaintiff to depose Coca-Cola. *See* Opp'n at 4. The Court construes Plaintiff's request as a motion pursuant to Federal Rule of Civil Procedure 56(d). Rule 56(d) authorizes a court to continue a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *See* Fed. R. Civ. P. 56(d).

Here, Plaintiff offers no such explanation in his accompanying declarations, and therefore fails to satisfy the requirements of Rule 56(d).[5] *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002) ("The facts supporting a Rule 56[(d)][6] motion must be set forth in an accompanying affidavit. Failure to comply with these requirements is a proper ground for denying relief.") (internal citations omitted). Moreover, Plaintiff has not articulated a sufficient reason to continue these hearings and delay ruling on the pending motion for summary judgment. In his opposition, Plaintiff states that a continuance would "allow Plaintiff to conduct a deposition of Defendant to further establish that the CBA's [sic] do not provide for overtime or premium rates for all overtime hours worked." *See* Opp'n at 4. However, as set forth below, the CBAs define "overtime" for the purposes of section 514, and the Court finds the CBAs provide premium wages rates for "all overtime hours worked" as a matter of law. Accordingly, the Court denies Plaintiff's Rule 56(d) request.

**B.    Overtime Violations (Second Cause of Action)**

Plaintiff brings a claim against Defendants for their purported failure to pay Plaintiff overtime compensation in violation of California Labor Code sections 510

---

[5] Defendants object to the admissibility of Plaintiff's declaration on the grounds of relevance, the parol evidence rule, lack of personal knowledge, and lack of foundation. *See* Doc. No. 18-4. Upon considering these objections, the Court finds Plaintiff's declaration is admissible and therefore **OVERRULES** Defendants' evidentiary objections.

[6] Rule 56(d) was formerly Rule 56(f). *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 n.8 (9th Cir. 2011).

and 1194 and California Code of Regulations, Title 8, section 11090.[7] Specifically, Plaintiff asserts that although he regularly worked over 10 hours per day and through his lunch period, Defendants failed to pay him overtime wages for work performed during his 30-minute meal periods.[8] Defendants move for summary judgment on this claim on the grounds that California Labor Code section 514, mirrored in Wage Order No. 1-2001,[9] exempts Plaintiff's claims for overtime under California Labor Code section 510.

California Labor Code section 510 sets forth the default requirements for a regular workday and overtime under California law. *See* Cal. Lab. Code § 510(a). Specifically, section 510 defines a regular workday as 8 hours of labor and a regular workweek as 40 hours of labor per week. *See id.* Additionally, section 510 requires

---

[7] The Court notes that the parties appear to disagree on which Industrial Welfare Commission ("IWC") Wage Order applies to the case at hand. Plaintiff alleges Wage Order No. 9-2001, which governs the Transportation Industry, governs this case. *See* IWC Wage Order No. 9-2001, Cal. Code Regs., tit. 8, § 11090. However, Defendants contend Wage Order No. 1-2001, which governs the manufacturing industry, is applicable. *See* IWC Wage Order No. 1-2001, Cal. Code Regs., tit. 8, § 11010.
"The main purpose of the business, not the job duties of the employee, determines which wage order applies in any given case." *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 514 (2009) (internal citation omitted). However, the Court need not determine which wage order governs this case because under either Wage Order 9-2001 or Wage Order 1-2001, the general daily overtime provisions do not apply to an employee governed by a valid collective bargaining agreement that meets certain requirements. *See* Wage Order No. 9-2001(3)(H); Wage Order No. 1-2001(3)(H). Although the Wage Orders recognize different exceptions to this exemption, none of the exceptions are applicable in this case.

[8] Plaintiff also brings a claim against Defendants for failure to provide meal periods in violation of California Labor Codes sections 226.7 and 512. However, as noted below, the Court does not reach the merits of this claim and therefore expresses no opinion as to Plaintiff's claim for meal period violations.

[9] Wage Order No. 1-2001(3)(H) provides:

> Except as provided in subsections (D) and (F), this section shall not apply to any employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Code Regs. tit. 8, § 11010.

an employer to pay overtime compensation to an employee for "any work in excess of eight hours in one workday and any work in excess of 40 hours in any one work week . . . at a rate of no less than one and one-half times the regular rate of pay for any employee." *Id.* Section 510 further requires an employer to pay overtime compensation to any employee for "any work in excess of 12 hours in one day . . . at the rate of no less than twice the regular rate of pay for an employee." *Id.*

California Labor Code section 514 provides an avenue by which an employee is exempt from section 510's default overtime requirements. *See* Cal. Lab. Code § 514; *Wylie v. Foss Mar. Co.*, No. 06-7228, 2008 WL 4104304, at *5 (N.D. Cal. Sept. 4, 2008). Section 514 provides:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514. In other words, where a CBA provides for (1) the wages, hours of work, and working conditions of the employees, (2) premium wage rates for all overtime hours worked; and (3) a regular hourly rate of at least 30% more than the state minimum wage, the requirements of section 510—including the default overtime requirements—do not apply to an employee governed by that CBA. *See id.*

Defendants assert the CBAs at issue—the BCI CBA and the CCR CBA—satisfy the three requirements of section 514 and therefore exempt Plaintiff from section 510's default overtime provisions. First, Articles 17 and 18 of the CBAs provide for the wages, hours of work, and working conditions of the employees subject to the CBAs terms. *See* Arts. 17, 18. Second, the CBAs expressly provide premium wages for all overtime hours work. Specifically, Article 18 of the CBAs provide that hourly employees on a five day, eight-hour day workweek will be compensated at a rate of 1½ times the employee's regular straight rate of pay for all hours worked in excess of 8 hours per day, 40 hours per week, or

the first 8 hours on the seventh consecutive day of work in a workweek. Art. 18, § 2. Similarly, hourly employees working a four-day, ten-hour per day workweek will be compensated at the rate of 1½ times the employee's regular straight rate of pay for all hours worked in excess of 10 hours per day, 40 hours per week, or the first 8 hours on the seventh consecutive day of work in a workweek. Additionally, an employee will be compensated at a rate of 2 times the employee's regular straight rate of pay for any work in excess of 12 hours per day or in excess of 8 hours on the seventh consecutive day of work in the workweek. *Id.* Defendants further assert Article 18 of the CBAs, which is consistent with the meal period provisions of the CBAs, expressly provide that meal breaks are not part of the workday and are thus unpaid. *See* Reply at 5.

And finally, Article 17 of the CBAs provides a regular hourly rate of at least 30% above state minimum wage. The minimum wage in California for the relevant time period—from March 2010 through February 2013—was $8.00 per hour,[10] so a regular hourly rate of pay of at least 30% above minimum wage is $10.40 per hour.[11] Article 17 of the CBAs provide that the starting hourly wages for the Distribution Department are at a rate of $18.25 per hour as of January 1, 2009, $18.75 per hour as of January 1, 2010, $19.15 per hour as of June 1, 2012, and $19.55 per hour as of June 1, 2013. Additionally, it is undisputed that Plaintiff earned at least $20.47 per hour since March 2010. Thus, the hourly rates set forth in the CBA clearly exceed $10.40 and therefore satisfy the third requirement.

Plaintiff does not dispute that the CBAs govern Plaintiff's employment for the

---

[10] Defendants request that the Court take judicial notice that the minimum wage rate in California for the relevant time period of March 2010 to February 2013 was $8.00 per hour. The Court **GRANTS** Defendant's request and takes judicial notice of this fact pursuant to Federal Rule of Evidence 201. *See* RJN, Doc. No. 16-5, Ex. A. Defendants also request the Court take judicial notice of two orders issued by other courts. *See id.* Exs. B, C. Because the Court resolves the instant motion without reference to either document, the Court denies as moot Defendants' request for judicial notice of Exhibits B and C.

[11] $8.00 increased by 30% is $10.40.

relevant time period—from March 20, 2010 through February 11, 2013. Additionally, Plaintiff does not dispute that the CBAs satisfy the first and third requirements of section 514.

According to Plaintiff, at issue is whether the CBAs satisfy the second requirement of section 514—by providing "premium wage rates for all overtime hours worked." *See* Cal. Lab. Code § 514. Plaintiff asserts a genuine issue of material fact exists as to whether the CBAs at issue provide for premium wages for "all overtime hours worked." Relying on *Gregory v. SCIE, LLC*, 317 F.3d 1050 (9th Cir. 2003), Plaintiff asserts "[section 514] applies *only if* the CBA 'provides premium wage rates *for all overtime hours worked.*'" Opp'n at 12 (quoting *Gregory*, 317 F.3d at 1053). Plaintiff maintains that because he routinely worked through his 30-minute lunch period and was not paid overtime compensation to which he claims to be entitled, the CBAs do not provide for premium rates for *all* overtime hours worked. Thus, according to Plaintiff, the CBAs do not satisfy the second requirement, and section 514 does note exempt Plaintiff's overtime claims.

In *Gregory*, an employee who was covered by a CBA brought an overtime claim, asserting his employer failed to pay overtime for work performed on different productions that, in the aggregate, exceeded eight hours in one workday and forty hours in one workweek in violation of California Labor Code section 510. 317 F.3d at 1051–54. The employer removed the action to federal court, asserting section 301 of the Labor Management Relations Act[12] completely preempted the plaintiff's state law overtime claims because resolving such claims turned on interpreting the CBA. However, the Ninth Circuit found because there was no dispute as to the CBA terms or its interpretation, resolving the plaintiff's overtime claims did "not require reference to, much less interpretation of, the CBA." *Id.* at 1053. The court found the plaintiff's overtime claim was based entirely on state law, and thus not

---

[12] Section 301 vests federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." *Gregory*, 317 F.3d at 1052 (quoting 29 U.S.C. § 185(a)).

preempted. *See id.* Accordingly, the Ninth Circuit held it lacked jurisdiction and dismissed the case. *Id.*

The Court finds Plaintiff's reliance on *Gregory* is misplaced. Unlike in *Gregory*, here, federal preemption is not an issue. Although Plaintiff asserts that it is "irrelevant" that the issue in *Gregory* involved preemption and not summary judgment, the Court disagrees. *See Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 110 n.3 (2014), *review denied* (Apr. 30, 2014) (finding *Gregory* was "of no assistance" because the issue was federal preemption); *see also Sperry v. Securitas Sec. Servs., USA, Inc.*, No. 13-0906, 2014 WL 1664916, at *5 n.4 (N.D. Cal. Apr. 25, 2014)

Further, to the extent the court in *Gregory* addressed California Labor Code section 514, its analysis is not helpful to Plaintiff. In considering whether section 514 applied and exempted the plaintiff's overtime claim under section 510, the court in *Gregory* recognized that "[o]vertime hours are defined in Section 510," *id.* at 1054 n.4, and thus reasoned that "the question [under section 514] is the same as that raised by Section 510: whether when overtime is paid under the CBA it is paid for *all overtime hours worked,* as required by California law." *Id.* at 1053 (emphasis in original). Relying on this language, Plaintiff contends that here, the CBAs are not valid under section 514 unless they provide premium wages for *all* overtime hours worked in accordance with California Labor Code section 510.

However, recently in *Vranish v. Exxon Mobil Corporation*, the California Court of Appeal clarified that the relevant CBA—not section 510—defines the term "overtime hours" for purposes of section 514's second requirement. *See Vranish*, 223 Cal. App. 4th at 109–13 ("[W]e conclude that the phrase 'overtime hours worked' is not defined by section 510."). The court reasoned that "in a collective bargaining agreement situation, the definition of the word 'overtime' is left to the parties, the rationale being that the worker is adequately protected." *Id.* at 111–12 (internal citation omitted). Therefore, "[w]hen there is a valid collective bargaining

agreement, employees and employers are free to bargain over not only the *rate* of overtime pay, but also *when* overtime pay will begin. Moreover, employees and employers are free to bargain over not only the timing of when overtime pay begins *within a particular day,* but also the timing *within a given week.*" *Id.* at 111 (emphasis in original) (internal citations and alterations omitted).

Thus, in light of *Vranish*,[13] the Court finds section 510 does not determine when Plaintiff works "overtime hours" and is thus entitled to overtime compensation. Instead, the CBAs do. *See id.* at 110, 113 ("Nothing in section 514 requires [the employer] to look to the definition of 'overtime' as that word is defined in section 510, subdivision (a)."). Here, the CBAs expressly define *workday* as "eight (8) consecutive hours of work *exclusive of lunch periods*" or "ten (10) consecutive hours of work *exclusive of lunch periods*." Art. 18, § 1 (emphasis added). The CBAs further provide overtime compensation for "all hours worked in excess of eight (8) hours per day or forty (40) hours per week" or "all hours worked in excess of ten (10) hours per day or forty (40) hours per week." Art. 18, § 2. Thus, under the terms of the CBAs, an employee is entitled to overtime compensation for all hours worked in excess of a workday—which, by definition, excludes lunch periods—and all hours worked in excess of a workweek.[14] *See id.*;

---

[13] *See Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.,* 973 F.2d 688, 696 n.4 (9th Cir. 1992) (explaining the Ninth Circuit's "interpretation of California law is binding in the absence of any subsequent indication from the California courts that [its] interpretation was incorrect"). Further, the fact that *Vranish* is an appellate court decision does not change this conclusion. When applying California law, "[i]n the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." *Owen By & Through Owen v. United States*, 713 F.2d 1461, 1464–65 (9th Cir. 1983) (internal citations and quotations omitted). Given that the California Supreme Court denied both the petition for review as well as the request for an order directing depublication of the appellate court's opinion, *Vranish v. Exxon Mobil Corp.*, No. S216880, 2014 Cal. LEXIS 3171 (April 30, 2014), there is no indication that it would decide the case differently.

[14] As noted above, the Court limits its analysis to Plaintiff's claim for overtime under section 510 only. The Court expresses no opinion as to the merits of Plaintiff's claims for meal time violations and/or entitlement to regular straight time pay.

*see also Sperry*, 2014 WL 1664916, at *5 (finding the CBA provided "for all overtime hours worked" under section 514 because the CBA provided that overtime only includes those hours worked in excess of 40-hour workweek, excluding sleep time).[15]

Because the CBAs' definition of "overtime" applies, the Court finds the CBAs satisfies the second requirement by providing for premium wage rates for all overtime hours worked. Accordingly, section 514 applies and exempts Plaintiff from the default overtime requirements of section 510. The Court therefore **GRANTS** Defendants' motion for summary judgment as to Plaintiff's second cause of action for overtime under section 510.

## C.   Wage Theft/ Time Shaving  (First Cause of Action)

Plaintiff brings a claim for wage theft and/or time shaving against Defendants, alleging that Defendants had a continuous policy of clocking-out Plaintiff for a 30-minute meal period, even though they required Plaintiff to work throughout his meal period. Defendants move for summary judgment on this claim on the grounds that California Labor Code section 514 exempts Plaintiff's claim for overtime. In his opposition, Plaintiff clarifies that his first cause of action "is not an overtime claim" but instead is "a claim for Defendant's failure to pay 'Plaintiff and those similarly situated for all hours worked' at the regular – not overtime – rate of pay." Opp'n at 10. Plaintiff further argues that because section 514 does not apply to claims for regular time, the Court should deny summary judgment.

///

---

[15] In *Sperry*, the court framed the issue as follows:

> The parties dispute how to interpret "overtime" as used in § 514: does the statute mean "overtime" as defined by state law, or may the CBA redefine what constitutes "overtime" in the first place? The difference is important here: while state law defines overtime as hours worked in excess of eight in a single workday, the CBA provides that overtime only includes those hours worked in excess of forty in one workweek, excluding sleep time.

*Sperry*, 2014 WL 1664916, at *5.

Upon reviewing Plaintiff's allegations in the Complaint, it is unclear whether Plaintiff alleges a claim for either regular time or overtime, or both.[16] However, to the extent Plaintiff's first cause of action asserts a claim for overtime in violation of California Labor Code section 510, the Court finds section 514 exempts such claims for the reasons set forth above. Accordingly, the Court **GRANTS IN PART** summary judgment in favor of Defendants to the extent Plaintiff's first cause of action is for failure to pay overtime in violation of section 510.

**D.     Meal Periods Violations  (Third Cause of Action)**

Plaintiff also brings a claim against Defendants for failure to provide meal periods or pay compensation in lieu thereof, in violation of California Labor Code sections 226.7 and 512 and IWC Wage Order No. 9-2001. Specifically, Plaintiff alleges that Defendants failed to provide 30-minute, uninterrupted meal breaks to Plaintiff because Defendants required Plaintiff to perform work tasks during his lunch period. Defendants move for summary judgment asserting California Labor Code 512(e) exempts this claim. In his opposition, Plaintiff clarifies that he is only seeking claims for meal period violations from March 20, 2010 through December 31, 2010. *See* Opp'n at 17 ("Plaintiff is not seeking claims for meal period violations from January 1, 2011 on."). On June 9, 2014, Defendants withdrew their summary judgment motion as to Plaintiff's meal period claims from March 20, 2010 through December 31, 2010 only. *See* Doc. No. 19.

Although Defendants still move for summary judgment regarding any meal period claims from January 1, 2011 through Plaintiff's termination date, Plaintiff has clarified that his third cause of action is for meal period violations from March 20, 2010 through December 31, 2010 only. Accordingly, the Court **DENIES AS MOOT** Defendants' motion for summary judgment as to Plaintiff's third cause of action for meal period violations beginning January 1, 2011.

---

[16] For example, Plaintiff alleges that Defendants "failed to pay for the overtime that was due pursuant to Labor Code sections 510 and 1194 and Industrial Welfare Commission Order No. 9-2001, item 3(A)." Compl. ¶ 43.

**E.      Wage Statements Violations (Fifth Cause of Action)**

Plaintiff brings a claim against Defendants for knowing and intentional failure to comply with itemized employee wage statement provisions, in violation of California Labor Code sections 226, 1174, and 1175 and IWC Wage Order No. 9-2001.  Defendants move for summary judgment, asserting the one-year statute of limitations bars this claim because although Plaintiff's employment terminated on February 11, 2013, he did not file his complaint until March 20, 2014—over a year later.  Plaintiff concedes this claim is time barred and therefore does not oppose Defendants' motion as to this claim.  *See* Opp'n 6, 9.

The Court therefore **GRANTS** Defendants' motion for summary judgment as to the fifth cause of action.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for partial summary judgment.

**IT IS SO ORDERED.**

DATED: July 11, 2014

*[signature]*

Hon. Michael M. Anello
United States District Judge